CHARLES A. TROWBRIDGE *vs.* CHARLES SCUDDER & others.

The stockholders of a corporation do not become liable as partners, on notes given by the treasurer of the corporation, merely because, after organizing under the act of incorporation, no corporate business is transacted, or because the notes were given for debts beyond the corporate authority of the company.

ASSUMPSIT, in which the plaintiff declared specially upon the following promissory note: " Boston, Feb. 22, 1849. $800. Four months after date, I promise to pay to the order of C. A. Trowbridge, eight hundred dollars, value received, with interest. Joseph M. Brown, Treasurer Ontonagon Copper Co." Under the common counts, six other notes were specified of the same form, for different sums, and payable at different times, and all indorsed in blank by C. A. Trowbridge. The writ was dated Oct. 22, 1849; and the defendants, residing in this commonwealth, were sued as partners doing business under the name and style of the Ontonagon Copper Company. At the trial before *Dewey*, J. the plaintiff offered in evidence the act of incorporation of the Ontonagon Copper Company, and called Joseph M. Brown, who testified, that the said company was organized April, 16, 1846, and has existed ever since. He produced and verified the books of the company; he also verified certain letters of credit signed by him, authorizing C. C. Cushman to draw on him as treasurer; also, certain letters, written by him as treasurer of the company to the plaintiff.

He further testified, that it appeared by the books of the corporation, that Scudder and Hobbs, two of the defendants, were original members, and still continued such; that Coffin, another defendant, became a member May 15th, 1846, and continued such till August 22d, 1849; that Brockway, a fourth defendant, became a member November 14th, 1846, and always continued such; that two of the defendants, Scudder and Hobbs, were directors in 1848 and 1849; that said company had never done any thing in or concerning the business of manufacturing copper in Salem, Massachusetts:

that in April, 1846, they engaged in the business of mining copper in Ontonagon County, Michigan, taking a lease of government lands for that purpose, and never had engaged in any other business; but that no ore, except specimens, had been received in Massachusetts from the mines; that letters, containing reports of investigations and operations at the mines, were from time to time received from persons in the employ of the company, and read at annual and special meetings of the company in Boston; that he recollected that Scudder, Hobbs, and Coffin, were present at such meetings. They resided in Boston; that he did not remember seeing Brockway there; he resided in Newburyport; the records did not always show who were present; that he had frequently conversed with Scudder, Hobbs, and Coffin, in relation to the mining business, and did not remember conversing with Brockway but once before this suit was commenced, when he, Brown, went to Newburyport to obtain payment for an assessment; but could not say certainly that any conversation passed, except on the subject of the assessment; had seen and conversed with Brockway since this suit was commenced; he never intimated ignorance of the affairs of the company.

He further testified that no assessments had been paid when he became treasurer; that all the assessments were laid after the company engaged in the mining business; that eight assessments were voted at different meetings of the company, the defendants Scudder, Hobbs, and Coffin, being present; and that all the defendants paid part or all of the assessments upon their respective shares.

He further testified that supplies of gunpowder, tools, provisions, &c. for the mines were obtained at the West, by vote of the company; and that the plaintiff furnished two bills of supplies; one bill at his, Brown's, directions, given by telegraph to the plaintiff, in October, 1848, and the other a short time previous, by the orders of one Cushman, an agent of the company in Michigan, authorized to act in the premises by letters of credit from, and votes of the company; that the obtaining of these supplies was, to his knowledge, known to the defendants Scudder, Hobbs, and Coffin, and that Scudder and

Hobbs, two of the defendants, who were directors, were consulted by him in relation to the ordering of supplies, and that he ordered them with their immediate advice and approval; that the plaintiff drew on him as treasurer of the company, by his directions, for the supplies furnished by his order, and presented for payment the drafts of Cushman on the company, in the plaintiff's favor, for the supplies furnished by Cushman's order. He further testified, that all these drafts were accepted by him for the company, and were protested for non-payment; that the plaintiff came to Boston and rendered an account of the drafts, costs of protest, &c.; that there was then due the plaintiff the sum of $3,020.52; and that he, Brown, having consulted the directors, Scudder and Hobbs, and with their approval, gave the notes in this suit, in behalf of the company, amounting to $3,020.52, to the plaintiff, for the drafts and other items of his account; that the fact that the plaintiff furnished supplies to the amount claimed in this suit had never been disputed.

Upon this evidence, and upon the books, letters, and papers thus introduced, the presiding judge proposed to rule that this action could not be maintained, and by consent, a nonsuit was entered, subject to the opinion of the full court on the foregoing evidence.

*R. Choate & J. S. Holmes*, for the plaintiff.

*E. D. Sohier & C. A. Welch*, for the defendants.

METCALF, J. The Ontonagon Copper Company was incorporated by *St.* 1846, *c.* 270, "for the purpose of manufacturing copper in the city of Salem, county of Essex, with all the powers and privileges, and subject to all the duties, restrictions, and liabilities, set forth in the thirty eighth and forty fourth chapters of the revised statutes." The act of incorporation was accepted, and the company organized under it. The defendants were members of the corporation when it was organized, or have since become such. The company never manufactured copper in Salem; but it engaged in the business of mining copper in Michigan, for the purpose of procuring copper ore to be sent to Salem to be manufactured. And its treasurer, with the approval of the directors, gave the

notes now in suit, for expenses incurred in that business of mining. That business was unsuccessful, and the company is insolvent. The plaintiff now seeks to recover of the defendants, as partners, the amount of the notes, in an action of assumpsit. The first ground taken by the plaintiff is, that there is no corporation; that the acceptance of the incorporating act, and the organization and choice of officers under it, did not produce a corporate existence; that corporate action, in the business for which the legislature offered a charter, was necessary to make a corporation; and that, as no such business was done by the company, it is still only a collection of individuals, without corporate powers, privileges, or liabilities. These seem to the court to be wholly unwarranted propositions. But we need not so decide; for if they were sound, they would not authorize the plaintiff to treat the members of the company as partners. *Fay* v. *Noble*, 7 Cush. 189.

The next ground taken by the plaintiff is, that the company, even if it be a corporation, had no authority, by its incorporating act, to make contracts for mining in Michigan; that its only authority was to manufacture copper in Salem, and make contracts necessarily incidental to that business; that contracts for mining are not thus incidental; that the company is not legally liable on those contracts; and therefore that the members of the company are personally liable thereon as partners, in a suit on the notes. We do not admit these premises. But if we held them to be correct, yet the conclusion, which the plaintiff deduces from them, would not follow. The notes, on their face, though signed by the treasurer of the company, are not his notes, but legally purport to be the notes of the company. Angell & Ames on Corp. (4th ed.) § 293. But, admitting that the company is not liable on these notes, as a corporation, yet it does not follow that its members are liable in a suit thereon. They may or may not be liable to the plaintiff, in some form of action, according to circumstances. The members of a corporation may doubtless so manage its concerns as to render themselves personally responsible to those with whom they deal. If they, in the name of the corporation, give notes which the corporation is

not bound to pay, and which it refuses to pay, they may, in many supposable cases, be held to indemnify the holders of such notes. The remedy against them, however, should not be by an action on the notes, but by an action of tort, as is the remedy against one who signs a note as agent for another, without authority. *Ballou* v. *Talbot,* 16 Mass. 461 ; *Jefts* v. *York,* 4 Cush. 371 ; *Jenkins* v. *Hutchinson,* 13 Ad. & El. N. R. 744. *Nonsuit confirmed.*